IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DANIEL TORRES-LONA,<br><br>Defendant. | Case No. CR06-0072<br><br>REPORT AND RECOMMENDATION |

_____

This matter comes before the court pursuant to the defendant's June 29, 2006 motion to suppress (docket number 10). The government resisted the defendant's motion on July 3, 2006 (docket number 14). The court held an evidentiary hearing on defendant's motion on July 5, 2006, at which the defendant was represented by attorney Mark Meyer and the government was represented by Assistant United States Attorney Stephanie Rose. As set forth below, it is recommended that defendant's motion to suppress be denied.

On May 25, 2006, the defendant was charged in a one-count indictment with "knowing and willfully [making] a false, fictitious and fraudulent material statement and representation, in that the defendant claimed orally to an agent of ICE that he had previously worked at a Cedar Rapids business utilizing his assigned Social Security number, when in truth an fact, the defendant knew he had worked at the Cedar Rapids business by utilizing a fraudulent Social Security number." Defendant argues that the evidence underlying his charged offense, i.e., alleged false statement in violation of 18 U.S.C. §1001 should be suppressed because it was made when he was in custody, under investigation, and without Miranda warnings. Defendant further asserts that he was subjected to an illegal search and seizure and that all evidence derived from that search and

seizure should be suppressed because it was obtained in violation of the Fourth Amendment.

The government resists defendant's motion, arguing that the agents' questioning of the defendant was not a "seizure" so as to trigger Fourth Amendment scrutiny, but rather was mere questioning, which the defendant voluntarily answered. During this questioning, which lasted less than one minute, the government contends that the agents made no show of authority and no physical force was employed. The government further argues that Miranda warnings were not required because the questions asked of the defendant were routine, administrative questions related to future deportation proceedings, to which the protections of the Fifth and Sixth Amendment do not apply. According to the government, illegal aliens have neither the right to remain silent, nor the right to have counsel present during an immigration interview. Once it became clear that criminal charges may also be appropriate, i.e., once agents learned that the defendant had made false statements to them, the agents provided the defendant with Miranda warnings. Alternatively, the government claims that even if Miranda warnings were required before the initial questioning, defendant's second false statement was voluntarily given after he was advised of his Miranda rights.

The court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

In March or April of 2006, the Cedar Rapids Police Department ("CRPD") contacted Immigration and Customs Enforcement ("ICE") with information regarding suspected Hispanic gang activity at the Cambridge apartment complex. Specifically, the police had encountered a vacant apartment there with the number "13" carved into the wall and there was blood present in the apartment. As testified to by ICE Special Agent Christopher Cantrell, the number "13" is significant because "M" is the 13th letter of the alphabet and the first letter of "Mexico." This evidence is consistent with the possible "jumping in" of a new gang member. Agent Cantrell further testified that the Cambridge

apartment complex has held a higher than average population of Hispanic illegal aliens. Since March of 2003, when Agent Cantrell was assigned to the Cedar Rapids area, he estimates that 50 or more illegal aliens have been arrested from the Cambridge apartments for numerous immigration and other federal violations.

Following receipt of the report from the CRPD, ICE began working with the CRPD to obtain copies of the identity documents that had been presented to the landlords at the Cambridge apartments. ICE reviewed those documents and determined that some individuals had presented counterfeit immigration documents and that one individual had made a false claim of U.S. citizenship when encountered by the CRPD.

ICE obtained federal search warrants to search several Cambridge apartments for counterfeit immigration documents. Three search warrants were executed on May 23, 2006, and two consent searches were carried out. Six undocumented aliens, all of whom were from Mexico, were arrested in or near the Cambridge apartments during the searches. Counterfeit immigration and Social Security documents were found for numerous persons that ICE did not encounter while conducting the searches. Thus, there were other persons of interest that ICE was looking for following the searches, i.e., Hispanic males that appeared to be in their late teens to mid-twenties.

Agents Cantrell and Spalding conducted an investigation the next day to attempt to locate additional individuals and to locate new graffiti in the apartment complex. Fresh, gang-related graffiti was found in the parking lot of the Cambridge apartments. As part of this follow up investigation, Agents Cantrell and Spalding encountered the defendant, whom they had previously seen coming out of the back of a restaurant that is adjacent to the apartment complex. Agent Cantrell testified that the defendant was dressed in a manner consistent with gang members, i.e., he was wearing baggy trousers, he had a large cubic zirconia type earring in each ear, he had a brown bandana on his head, and a flat bill cap on top of that which was turned to one side. Agents Cantrell and Spalding approached the defendant and asked him to come talk to them. The defendant complied with the

3

request. As Agent Cantrell approached, he made sure that his t-shirt was tucked behind his firearm so that his badge was exposed and the defendant could see that he was a law enforcement officer. The agents asked the defendant where he was born, and the defendant answered that he was born in Mexico. The agents next asked the defendant if he had any immigration documents, to which he replied that he did not. At this time the defendant was taken into custody, handcuffed, and placed in the back of the agents' unmarked car.

While leaving the apartment complex, the agents asked the defendant where he had been working and under what name. Agent Cantrell testified that these questions were part of the agents' attempt to verify who he was and to determine what the appropriate processing and administrative action would be. He also testified that these questions were asked, in part, due to the fact that during their pat-down search of the defendant they found a Social Security card in his wallet, which appeared to be valid, and that is unusual for an individual who admits being an illegal alien. Agent Cantrell testified that the presence of the Social Security card indicated that the defendant may have been lawfully admitted into the United States and been deported, or that they may have been some other previous immigration encounter.

In an attempt to clarify the presence of the Social Security card in the defendant's wallet, the agents asked the defendant if the card was his. The defendant said it was. In an attempt to verify if the defendant had any type of lawful immigration status, the agents asked the defendant where he had worked. Agent Cantrell testified that the questions regarding the defendant's employment were part of the standard processing of an undocumented alien, and appear on ICE form I-213 (Record of Deportable/Inadmissable Alien). The defendant was not provided Miranda warnings prior to the questioning regarding his employment status. Agent Cantrell testified that Miranda warnings were not given because the interview was administrative in nature and not intended to seek evidence in a criminal matter. Agent Cantrell further testified that Miranda warnings are generally

4

provided to undocumented aliens when the ICE agent becomes aware of facts that indicate that a crime has been committed. Agent Cantrell testified that he was not anticipating criminal charges at the time he questioned the defendant about his work history.

In response to the agents' questions regarding his employment status, the defendant stated that he had worked for Sedona Staffing using his name and the Social Security number on the card found in his possession. Because they were only three blocks from Sedona Staffing, the agents decided to go to there and inquire whether the defendant had, in fact, worked there. Sedona Staffing was unable to locate an employment file under defendant's name. Agent Spalding then brought the defendant into Sedona Staffing, where a staff member immediately recognized the defendant and called him by his first name. Sedona Staffing then searched for employment records using defendant's name and Social Security number from the card in his possession. No employee file was located, but Sedona Staffing's records indicated that the defendant had last worked there in 2003.

The defendant was then brought to the ICE office in Cedar Rapids for administrative processing. On the way to the ICE office, the agents told the defendant that they believed that he was not providing correct information and informed him that there were penalties for providing false information to law enforcement officers. Upon arrival at the ICE office, the agents placed the defendant in the processing area and continued their administrative processing of him. Defendant was later advised of his <u>Miranda</u> rights and questioned him further on the issue of his employment. Approximately 45 minutes passed from the agents' initial encounter of the defendant until the time he was advised of his <u>Miranda</u> rights.

The defendant asked Agent Cantrell how much time he would serve if he had lied. Agent Cantrell responded that it would be the judge's decision as to how much of a sentence he would have to serve. The defendant then stated that he had lied and that he had actually worked under the name of Manuel Torres and used a different, false Social Security card to gain employment. Agent Cantrell then called Sedona Staffing and

5

confirmed that an individual going by the name Manuel Torres had worked there using a different Social Security number. Sedona Staffing faxed a copy of the I-9 form to the ICE office.

## CONCLUSIONS OF LAW

"Under Miranda, the government is prohibited from using statement made during custodial interrogation unless the defendant has been previously advised of his Fifth Amendment privilege against compulsory self incrimination and right to an attorney." U.S. Lockett, 393 F.3d 834, 837 (8th Cir. 2005). However, "[the] Miranda warning requirement is not applicable to every situation where law enforcement asks questions, rather it is the compulsive or coercive aspect of custodial situations that trigger Miranda." U.S. v. Layne, 973 F.2d 1417, 1421 (8th Cir. 1992); Lockett, 393 F.3d at 837. General indicia of custody include "(1) whether law enforcement informed the suspect the questioning was voluntary, and the suspect was free to leave and was not under arrest; (2) whether the suspect had unrestrained freedom of movement during the questioning; (3) whether the suspect contacted the authorities or voluntarily agreed to official requests to answer questions; (4) whether law enforcement employed strong arm tactics or deceptive statements during questioning; (5) whether the atmosphere of the interrogation was police dominated; or (6) whether law enforcement places the suspect under arrest at the end of questioning." U.S. v. Sheikh, 367 F.3d 756, 763 (8th Cir. 2004) (citing U.S. v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990)). Further, the right to Miranda warnings does not apply to routine processing-type questions which are not reasonably likely to elicit an incriminating response, such as name and address. U.S. v. Reyes, 908 F.2d 281, 288 (8th Cir. 1990) (citing U.S. v. Disla, 805 F.2d 1340, 1347 (9th Cir. 1986)). See also U.S. v. McLaughlin, 777 F.2d 388, 391 (8th Cir. 1985) (holding that requests for routine information necessary for basic identification purposes is not interrogation under Miranda, even if the information turns out to be incriminating, unless the questioning officer should have reasonably been aware that the information sought is directly relevant to the

6

substantive offense charged). "Only if the government agent should reasonably be aware that the information sought, while merely for basic identification purposes in the usual case, is directly relevant to the substantive offense charges, will the questioning be subject to scrutiny." Id. at 391-92.

The government does not dispute that the defendant was in custody at the time he was questioned about his employment history. The issue then becomes whether the defendant was subjected to "interrogation" for purposes of Miranda, or whether the questions were purely administrative, such that the interviewing agent should not have reasonably been aware that the information sought would be directly relevant to the offense charged.

Agent Cantrell testified that the object of the May 23, 2006 search of the Cambridge apartments was counterfeit immigration documents. He was conducting follow up when he encountered and ultimately apprehended the defendant on May 24, 2006. Prior to being taken into custody, the defendant stated that he was born in Mexico and that he possessed no immigration documents. After the defendant was taken into custody, his wallet was searched and a seemingly valid Social Security card was found. The defendant was then questioned regarding his employment status. The questions were limited to determining status that would permit him to work.

Under these circumstances, the court concludes Agents Cantrell and Spalding should not have reasonably been aware that the information sought regarding the defendant's employment history would be relevant to the offense charged, and Miranda warnings were not required. Cantrell limited his questions to those necessary to determine the defendant's immigration status and to explain the inconsistency between the defendant's response concerning immigration documents and his possession of a seemingly valid social security card. The defendant possessed a seemingly valid Social Security Card and Agent Cantrell's testimony that he questioned the defendant in an effort to determine his immigration status stands unrefuted. See U.S. v. Lawrence, 952 F.2d 1034, 1036 (8th

Cir. 1992) (finding that routine, identification questions necessary for booking purposes was not an interrogation under Miranda)

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections[1] to the Report and Recommendation within ten (10) days the date of the report and recommendation, that the defendant's June 29, 2006, motion to suppress (docket number 10) be denied.

August 4, 2006.

*[signature]*
JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT

---

[1]Any party who objects to this report and recommendation must serve and file specific, written objections within ten (10) court days from this date. A party objecting to the report and recommendation must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections.